UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

CHRISTOPHER CHARLES BARTLETT,            Case No. 21-11289-t7

    Debtor.

**OPINION**

    Before the Court is the U.S. Trustee's ("UST's") motion to dismiss this chapter 7 case as abusive under § 707(b).[1] The UST contends the presumption of abuse arises under the "means test," and also that the totality of the circumstances demonstrates abuse. Debtor disputes both points. The Court finds in favor of the UST's position, and so will grant the motion.

A.     Facts.[2]

    For the purpose of ruling on the motion to dismiss, the Court finds:[3]

    Debtor is an experienced welder/pipe fitter. He moved to Albuquerque, New Mexico in 2018. At the time, he owned a Chevrolet 2500 pickup truck and a 2017 Keystone Fusion "5th Wheel" trailer. He bought a house in Albuquerque and a new 2019 Harley Davidson Road Glide Special motorcycle. Debtor started a business, HC Bartlett Construction, Inc. The business ultimately failed, but Debtor had steady work in Albuquerque and made about $78,000 per year. Debtor got behind on his truck payments, and in July 2020 the lender repossessed the truck. Debtor

---

[1] All section references herein are to Title 11 of United States Code (the "Bankruptcy Code") unless otherwise specified.
[2] The Court takes judicial notice of the docket in this case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.,* 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket and of facts that are part of the public records).
[3] Some of the Court's findings are in the discussion section of the opinion. They are incorporated by this reference.

began using the Harley Davidson as his sole mode of transportation. In November 2020 he sold the Albuquerque house.

In May 2021 Debtor moved to Selma, Texas to accept a full-time job with TCS Mechanical. Currently he is a superintendent at TCS Mechanical, earning about $78,000 per year.

When he moved, Debtor left some personal belongings and the 5th Wheel in storage in Los Lunas, New Mexico. That September he retrieved the personal property but left the 5th Wheel in Los Lunas, where it remains. Debtor has not made the $760 monthly payments on the 5th Wheel for more than 18 months. The trailer is uninsured, is not being maintained, and is worth less than the purchase money debt.

In Selma, Debtor moved into a three bedroom two bathroom house that a friend, Harvender Sandhu-McLaughlin, was renting for $2,000/month. He reached a deal with Ms. McLaughlin that he would pay the rent and she would pay the utilities and house maintenance costs and buy the groceries.[4]

When he moved in, Debtor's only mode of transportation was the Harley Davidson. Debtor is current on his $692 monthly motorcycle loan payments. There is no equity in the motorcycle.

Debtor filed this case in November 2021. He is unmarried, has no dependents, pays no alimony or child support, and has no student loans. Debtor's scheduled unsecured claims total $38,162, none of which are entitled to priority status.

Debtor filed Official Form 122A-2 (Chapter 7 Means Test Calculation) along with his other bankruptcy schedules. According to his calculations, his adjusted current monthly income was

---

[4] Debtor estimated that the monthly expenses Ms. McLaughlin's pays under the agreement are: electricity: $300-$400; water: $40; cable/internet: $250; yard maintenance: $170; garbage: $60. These total about $925. Debtor also estimated that Ms. McLaughlin spends about $300-$400 a week on groceries. If she spends $1,200 a month on groceries, then her share of the deal comes out to about $2,125.

$6,560.88, while his total deductions were $6,509.20. These figures, if accurate, create no presumption of abuse under the "means test," discussed below.

The U.S.T.'s office filed a motion to dismiss the case under § 707(b) on January 26, 2022.

In June 2022, Debtor agreed to buy Ms. McLaughlin's 2017 Toyota Tundra by paying $490/month for 60 months. There does not appear to be substantial equity in the Tundra.

B.     Dismissal of a Chapter 7 Case under § 707(b).

  1.     The text. Section 707(b)(1) provides:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

For individual debtors with primarily consumer debts, a finding of abuse under § 707(b)(1) can be based on a "presumption of abuse," § 707(b)(2); a finding that the case was filed in "bad faith," § 707(b)(3)(A); or on the "totality of the circumstances." § 707(b)(3)(B).

  2.     The Court's discretion. § 707(b)(1) provides that the court *may* dismiss a case upon a finding of abuse. Does that language give the court discretion to deny a motion to dismiss even when a movant proves abuse? The Court concludes that it does. When the Bankruptcy Code was enacted, § 707 only consisted of what is now § 707(a)(1) and (2). Section 707(b) was added in 1984, as follows:

> After notice and a hearing, the court, on its own motion and not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

-3-
Case 21-11289-t7    Doc 43    Filed 01/20/23    Entered 01/20/23 14:05:19 Page 3 of 13

Some amount of judicial discretion is clear in this first iteration of § 707(b). In 1986 Congress amended § 707(b) to provide that dismissal could be on the court's own motion "or on a motion by the United States trustee." The addition did not alter the Court's discretion.

The Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). changed § 707(b) substantially:

> *(1)*After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, ~~but not at the request or suggestion of~~ *trustee (or bankruptcy administrator, if any), or* any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts*, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title,* if it finds that the granting of relief would be a*n* ~~substantial~~ abuse of the provisions of this chapter. ~~There shall be a presumption in favor of granting the relief requested by the debtor.~~ . . .

The Court concludes that BAPCPA did not eliminate the court's discretion to keep a case in chapter 7 despite a finding of abuse. The alternative reading, adopted by some courts, is to construe the word "may" as referring only to the option of dismissal or conversion, not to the option of granting or denying the motion. *See, e.g., Justice v. Advanced Control Solutions, Inc.*, 2008 WL 4368668, at *5 (W.D. Ark.), aff'd 639 F.3d 838 (8th Cir. 2011) (the "may" in § 707(b) is used to indicate discretion only to decide whether to dismiss or convert if the presumption of abuse arises and is not rebutted); and *In re Haman*, 366 B.R. 307, 311 (Bankr. D. Del. 2007) (if the presumption of abuse arises and is not rebutted, the Court has no discretion and must dismiss the chapter 7 case). This reading, which converts "may" into "shall," is strained: if the Court "may" dismiss or convert a case, then it is not required to do either. Based on the history of § 707(b), the most natural reading of the text, and the ease with which Congress could have changed "may" to "shall," the Court concludes that some discretion survived BAPCPA. This interpretation is bolstered by that fact that, pre-BAPCPA, courts had the discretion to keep a case in chapter 7

despite a showing of "substantial abuse." The lower threshold of "abuse" would seem to call for more, rather than less, discretion.

Other courts have reached this conclusion. *See, e.g., In re Livingston*, 2022 WL 951339, at *4 (Bankr. D. Del.) (dismissal is discretionary, not mandatory); *In re Skvorecz*, 369 B.R. 638, 643 (Bankr. D. Colo. 2007) ("when Congress intended to use 'shall,' it d[id]"); and *In re Mravik*, 399 B.R. 202, 209 (Bankr. E.D. Wis. 2008) ("That dismissal was the sole option for 21 years prior to BAPCPA and Congress did not change the word "may" when adding the option to convert to Chapter 13 suggests that the term means more than the choice between the options of dismissal or conversion"); *In re Jenkins*, 2012 WL 2564901, at *2 (Bankr. W.D.N.C.) (use of "may" rather than "shall" means that conversion or dismissal of a case is discretionary).

Nevertheless, the Court agrees with the cases holding that it would be unusual to deny a motion to dismiss after a finding that granting relief would be an abuse of chapter 7. *See, e.g., Mravik*, 399 B.R. at 210 (discretion should not be exercised lightly, but rigorously and sparingly); and *In re Planck*, 2007 WL 3575651, at *7 (Bankr. C. D. Ill.) (discretion should not be exercised lightly).

C.  Presumption of Abuse - § 707(b)(2).

§ 707(b)(2), added to the Bankruptcy Code in 2005 as part of BAPCPA, provides that an abusive filing is presumed if the debtor fails the so-called "means test."

1.  The means test. Under § 707(b)(2), a debtor's petition for Chapter 7 relief is presumed abusive if the debtor is an individual who has primarily consumer debts, *see* § 101(8), and "the debtor's current monthly income exceeds his statutorily allowed expenses, including payments for secured debt, by more than a prescribed amount." *Milavetz, Gallop & Milavetz, P.A. v. U.S.*, 559 U.S. 229, 244 (2010) (citations omitted). This is the means test. *See* § 707(b)(2)(D)

(describing the calculation as "means testing."). The means test was intended to take the discretion and guesswork out of calculating how much a debtor might be able to pay each month to creditors. *See, e.g., In re Beach,* 2022 WL 16823512, at *4 (Bankr. D.N.M.) (The means test's formulaic, standardized approach to determining a debtor's reasonable monthly expenses clearly is what Congress intended when it passed BAPCPA).

The income side of the means test is the debtor's "current monthly income," as defined in § 101(10A). In general, current monthly income is the debtor's average monthly income for the last six months prepetition, plus payments from others for household expenses, but not including social security and certain veterans' payments. § 101(10A). Typically, calculation of current monthly income, while it may not result in what a debtor actually makes on the petition date, is not difficult.

The expense side of the means test is a formula stated in § 707(b)(2)(A)(ii), (iii) and (v). It can be summarized as follows:

§707(b)(2)(A)(ii) expenses:
- Applicable monthly expense amounts specified under the National Standards and Local Standards issued by the Internal Revenue Service (IRS);
- Actual monthly expenses for the categories specified as Other Necessary Expenses by the IRS;
- Expenses for protection against family violence and for care of the elderly;
- Expenses of administering a chapter 13 case;
- Private school expenses of $2,275 or less for dependent children; and
- Utility expenses for home energy in excess of the IRS allowances.

§ 707(b)(2)(A)(iii) expenses:
- Average monthly payments on secured debts due each month over the next 60 months, including some arrearages.

§ 707(b)(2)(A)(iv) expenses:
- 1/60 of all priority claims.

Official Form 122A-2 was drafted to administer the means test. Individual chapter 7 debtors must complete the form and file it with their bankruptcy schedules and statements. § 707(b)(2)(C).

If a presumption of abuse arises, the debtor may rebut it by demonstrating "special circumstances" justifying additional expenses or adjustments to the standards, for which there is no reasonable alternative. § 707(b)(2)(B); *see also In re Linville,* 446 B.R. 522, 529 (Bankr. D.N.M, 2011) (rebutting the presumption requires a debtor to demonstrate special circumstances that justify the additional expense, for which there is no reasonable alternative). Courts have discretion in determining whether special circumstances exist. *Id. a*t 529-530.

Here, Debtor is an individual and his debts are primarily consumer debts. He therefore is subject to means testing to determine whether his chapter 7 filing gives rise to a presumption of abuse. Debtor's Form 122A-2 shows that he "passes" the means test, i.e., that no presumption of abuse arises.

In its motion to dismiss, the U.S.T. contends that Debtor did not complete the means test properly. Debtor and the U.S.T. agree about Debtor's current monthly income calculation. However, the U.S.T. takes issue with two of Debtor's expense deductions. If the U.S.T. is right, then Debtor would "flunk" the means test by a fairly wide margin, giving rise to a presumption of abuse.

    2.    <u>Housing expenses</u>. The first area of disagreement is Debtor's claimed expenses for housing. Using the IRS local standards for Debtor's county of residence (Guadalupe County, Texas), Debtor is allowed to claim expenses of $478 for housing "Insurance and operating expenses" and $1,122 for housing "Mortgage or rent expenses." His deductions were close to those

-7-
Case 21-11289-t7    Doc 43    Filed 01/20/23    Entered 01/20/23 14:05:19 Page 7 of 13

amounts.[5] In addition, however, Debtor deducted $792 for "actual expenses less IRS standard." The U.S.T. argues that Debtor is not allowed to take this additional $792 deduction.

        a.     <u>The rent Debtor pays above the IRS standard is not deductible</u>. In calculating whether the presumption of abuse arises, debtors may deduct housing expenses in the amounts specified in the IRS' National/Local Standards. If a debtor's actual expenses are less than the amount specified by the IRS, then the debtor gets a break. If his expenses are greater than the specified IRS amount, on the other hand, the debtor must nevertheless use the IRS figures. This was the ruling in *Ransom v. FIA Card Services, N.A.*, 562 U.S. 61 (2011), where the Supreme Court held that, under § 707(b)(2)(A)(ii), "applicable" expenses of the National Standards and the Local Standards are limited by the amounts specified therein, while "actual" expenses may be only used for expenses in the Other Necessary Expenses category. *Id.* at 75. Among IRS's Local Standards are housing expenses, so Debtor "…may claim an allowance only for the specified sum, rather than for his real expenditures." *Id.* For Guadalupe County, Texas, Debtor's deduction for housing expenses expense is limited to $1,122 (rent) and $478 (insurance and operating expenses).

Debtors' housing expenses for purposes of calculating monthly disposable income under § 707(b)(2) must be reduced by $687 ($792 - $105).

        b.     <u>Debtor's extra rent expense is not a "special circumstance."</u> Debtor argues in the alternative that he should be allowed to deduct his actual rent expense as a special circumstance to rebut the presumption of abuse. The argument must be overruled. "Special circumstances" typically must arise from circumstances beyond debtor's control. *See, e.g., In re Castle*, 362 B.R. 846, 851 (Bankr. N.D. Ohio 2006); *In re Lightsey,* 374 B.R. 377, 381–82 (Bankr. S.D. Ga. 2007),

---

[5] Debtor used the IRS housing expenses for Bexar County, Texas, but the rental house is in Guadalupe County. Guadalupe County's IRS standard housing expenses are $105/month more than Bexar County's. The Court will give Debtor credit for the extra expense deduction.

and *In re Hank*, 618 B.R. 185, 192 (Bankr. W.D. La. 2020). Further, given the two examples in the statute (a serious medical condition or a call to active military duty), the circumstances should be unusual, serious, and compelling. *See, e.g., United States v. Brown*, 536 F.2d 117, 121 (6th Cir. 1976) ("[U]nless a statute otherwise indicates, where a listing of particular or specific objects is followed by general words to indicate that the list is incomplete, the general words will not be construed broadly, but will be limited to include only objects of the same kind or class specifically enumerated.").

Debtor testified that when he moved to Selma, he found available residential housing with significantly lower rent, as low as $1,600 per month. Thus, there were reasonable alternative housing arrangements with lower rent available. There were no circumstances beyond his control that compelled him to pay $2,000 in rent.

Furthermore, if Debtor had agreed to move into Ms. McLaughlin's house and pay $1,600 a month for rent, insurance, and operating expenses (the allowed amount under IRS' local standard), and for half the food expenses, Debtor would have come within the IRS allowances for both while paying 50% of those expenses. In other words, under his current arrangement, Debtor isn't paying more that the combined IRS standards for food and housing; he is overpaying for housing and underpaying for food. That is not a "special circumstance."

3. <u>Debtor's vehicle operating expenses</u>. The U.S.T. also objects to Debtor's $448 deduction for vehicle operation expenses. *See* Form 122A-2, line 12. Under the IRS Local Standards for Guadalupe County, Texas, Debtor is allowed a vehicle operating expense of $224 per vehicle. Debtor claimed expenses for two vehicles. The U.S.T. argues that Debtor is only entitled to deduction for one vehicle.

a. <u>Debtor can't claim vehicle operating expenses for the 5th Wheel</u>. Debtor's claimed second vehicle is the 5th Wheel. The IRS standards do not define "vehicle," but it is clear to the Court that the intent behind allowing the expense is so taxpayers/debtors can get to work, take children to school, go to the doctor, etc. The Harley Davidson provides the necessary transportation, albeit imperfectly when it is raining, snowing, or cold. The unoccupied 5th Wheel, stored 750 miles away, provides nothing. The 5th Wheel is transportable housing, not transportation. It is not a vehicle within the IRS's intended meaning, nor within the spirit of the means test.

Debtor bought the Tundra postpetition. Had he owned the Tundra on the petition date, he could have claimed a second vehicle expense. The means test is based on the debtor's financial situation on the petition date, however. *See, e.g., In re McKay*, 557 B.R. 810 815-16 (Bankr. W.D. Okla. 2016) ("The great weight of authority holds that the means test calculation of § 707(b)(2) is based on a "snapshot" of a debtor's financial situation as of the petition date, without consideration of whether the debtor's expenses may change after that date"); *In re Rudler*, 388 B.R. 433, 438 (1st Cir. BAP 2008); *In re Rivers*, 466 B.R. 558, 567 (Bankr. M.D. Fla. 2012) ("the determination of whether to permit a Chapter 7 debtor to proceed in a liquidating case should be made as of the petition date"). Debtor cannot claim a vehicle operating expense deduction for a truck he bought postpetition.

Debtor's vehicle operating expenses must be reduced by $224. This, combined with the $687 housing adjustment, means that Debtor fails the means test by $40,000 or more.

b. <u>Special Circumstances</u>. Debtor argues that his purchase of the Tundra is a "special circumstance" justifying additional expenses for which there is no reasonable alternative. The argument fails. Debtor doesn't need two vehicles. One sensible course would be to sell the Harley

and the 5th Wheel, save the $1,255.33 in monthly loan payments, and use the Tundra as his transportation. In any event, keeping the Harley and/or the 5th Wheel does not make buying the Tundra a special circumstance.

D.  Other Indicia of an Abusing Filing—§ 707(b)(3)(B).

If the presumption of abuse does not arise or is successfully rebutted, § 707(b)(3) requires the Court to consider whether the debtor filed the petition in bad faith, § 707(b)(3)(A), or whether the totality of the circumstances of the debtor's financial situation demonstrates abuse. § 707(b)(3)(B).

1.  Bad faith. The U.S.T. did not argue that Debtor filed this case in bad faith. There is no evidence Debtor filed this case in bad faith.

2.  Totality of the circumstances. While the Bankruptcy Code does not say what "totality of the circumstances" would "demonstrate abuse," the Tenth Circuit interpreted the meaning of the phrase in *In re Stewart*, 175 F.3d 796 (10th Cir.1999). *Stewart*, a pre-BAPCPA case, addressed a motion to dismiss a chapter 7 case for substantial abuse. It adopted a "totality of the circumstances" test to determine whether the filing was abusive. *Stewart* it is still applicable to the analysis of abuse under § 707(b)(3). *See, e.g., In re Jaramillo*, 526 B.R. 404, 411 (Bankr. D.N.M. 2015) (it is appropriate to use the *Stewart* factors, given Congress's codification of the "totality of the circumstances" test); *see also In re Witcher*, 702 F.3d 619, 622 (11th Cir. 2012) ("Congress was doubtless aware when it codified the totality-of-the-circumstances standard that the relevant pre–BAPCPA jurisprudence took into consideration a debtor's ability to pay his or her debts.").

Under *Stewart,* the primary factor in determining whether granting Chapter 7 relief would be an abuse is the Debtor's ability to pay his debts. *Id.* at 809. An abuse analysis is made on a case-by-case basis, however, so other factors must be examined, including:

> (1) Whether the debtor enjoys a stable source of future income; (2) whether the debtor is eligible for adjustment of debt through Chapter 13; (3) whether state remedies exist to ease the financial predicament; (4) the degree of relief obtainable through private negotiation; (5) sudden illness, calamity, disability, or unemployment; (6) whether the debtor's expenses are excessive and/or can be significantly reduced without being deprived of adequate food, clothing, shelter, and other necessities; (7) the accuracy of the statements and schedules; (8) the existence of excessive cash advances or consumer purchases; and (9) the debtor's good faith.

*Jaramillo*, 526 B.R. at 811 (summarizing the *Stewart* factors). The Court weighs the *Stewart* factors as follows:

| Factor | Analysis |
| --- | --- |
| 1. Debtor's ability to pay | Debtor has the ability to pay some amount each month to his creditors without undue hardship. The chapter 13 trustee might encourage Debtor to surrender his motorcycle and/or 5th Wheel, but those matters are for another day. Unlike in *Stewart*, Debtor is not a high income debtor filing bankruptcy to get back at an ex-wife. Nevertheless, he can make substantial chapter 13 plan payments without undue hardship. |
| 2. Debtor enjoys a stable source of future income; | Debtor has a good job. There is no evidence that his job might be in jeopardy. |
| 3. Debtor is eligible for adjustment of debt through Chapter 13. | Debtor is eligible for chapter 13. |
| 4. Whether state remedies exist to ease the financial predicament. | Not applicable. |
| 5. The degree of relief obtainable through private negotiation; | Not applicable. |
| 6. Sudden illness, calamity, disability, or unemployment; | None. |
| 7. Debtor's expenses are excessive and can be significantly reduced without being deprived of adequate food, clothing, shelter, and other necessities; | Debtor does not have an extravagant lifestyle. Nevertheless, he could reduce his monthly living expenses fairly easily. |
| 8. The accuracy of Debtor's statements and schedules. | The statement and schedules are accurate. |

| 9. The existence of excessive cash advances or consumer purchases. | None. |
|---|---|
| 10. Debtor's good faith | Debtor filed this case in good faith. |

Factors 1, 2, 3, 6, and 7 weigh in favor of a finding of abuse. Factors 8, 9, and 10 weigh against such a finding. Factors 4 and 5 do not apply. As factor 1 should be given predominant weight, the Court finds that the totality of the circumstances demonstrate abuse.

E. <u>The Court's Discretion to Deny the Motion</u>.

As discussed above, the Court has some discretion to deny the motion, even after finding that the filing was abusive. There is no compelling reason to do so in this case, however, so the Court will not exercise its discretion.

<u>Conclusion</u>

After making the required adjustments to his allowable housing and vehicle operating expenses, Debtor fails the means test. No special circumstances rebut the resulting presumption of abuse. In addition, the totality of the circumstances demonstrates abuse. Although the Court has limited discretion not to dismiss or convert the case upon a finding of abuse, there is no compelling reason to exercise that discretion in this case. By a separate order, the Court will grant the U.S.T.'s motion.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: January 20, 2023
Copies to: electronic notice recipients